OPINION OF THE COURT
Leonard E. Maas, J.
The Department of Social Services of Erie County, New York, brings this proceeding against the respondent, Michael T., pursuant to the Uniform Support of Dependents Act (Domestic Relations Law art 3-A). The Department, as assignee of Karin T., seeks support from the respondent for the benefit of two children, David T., born October 8, 1980, and Falin T., born January 17, 1983. Petitioner further alleges that the respondent, Michael T., is the father of the dependent children.
To this rather routine-appearing petition, the respondent has filed an answer which sets forth as an affirmative defense the following: “2. That the respondent is a female and she is not the father of the said children. That the children were artificially inseminated.”
The respondent has now moved this court to dismiss the petition on the grounds that it fails to state a cause of action.
A review of the facts as set forth in the respondent’s moving papers is appropriate.
Respondent was born on August 16,1948, and is denominated a female named Marlene A. T. In her 20’s she became increasingly unhappy with her feminine identity and attempted to *15 change that identity and to live like a man. In pursuance thereof, she changed her name from Marlene to Michael, dressed in men’s clothing and obtained employment which she regarded as “men’s work”. At some time prior to May of 1977, the respondent and Karin T. commenced a relationship. In May of 1977, Karin T. and Michael T., also known as Marlene T., obtained a marriage license in the Village of Spencerport in the County of Monroe. At that time, no birth certificate was requested of either party and a marriage license was issued. Subsequently, Karin T. and the respondent participated in a marriage ceremony which was performed by a minister in the Town of Parma, County of Monroe. This was evidenced by a certificate of marriage executed by said minister.
Thereafter, two children were born by means of artificial insemination. The physician, prior to engaging in the procedure, had both parties execute an agreement, a copy of which is annexed hereto and made a part hereof. David T. was born October 8, 1980, and Falin T. was born January 17, 1983, as a result of the artificial insemination performed by the physician.
Subsequent to the birth of the second child in 1983, the parties separated and the respondent moved to the Monroe County area and is employed in Monroe County.
Although some question has been raised as to whether or not by means of medical procedures the respondent has indeed become a transsexual, this court would be without jurisdiction to determine that fact arid for the purposes of this proceeding only, finds that the respondent is indeed a female.
During the period of 1977 through 1983, it would appear that Karin T. and the respondent lived together in the same household and both contributed to the support of the family and to the children who are the subjects of this proceeding.
The court has been further informed that there is presently pending in the Supreme Court of Erie County, State of New York, an action between Karin T. and the respondent to declare the “marriage” of 1977 null and void.
Family Court being of limited jurisdiction (see, NY Const, art VI, § 13; Walker v Buscaglia, 71 AD2d 315) lacks the power to determine all of the rights and obligations which the factual web created by these parties presents. However, this court does have jurisdiction to determine whether or not this respondent is responsible for the support of these children. (See, Family Ct Act § 413; Domestic Relations Law art 3-A.)
Neither counsel for the parties nor the court has found any authority similar to the fact situation in this case. This is a case *16 of first impression and its resolution will carry the court through uncharted legal waters. As a general rule only biological or adoptive parents are liable for the support of children. Where extraordinary circumstances require, courts have held nonparents responsible for the support of children. (See, Wener v Wener, 35 AD2d 50; Lewis v Lewis, 85 Misc 2d 610.)
It is conceded that the children involved in this proceeding were born only after the respondent affixed her name to the agreement indicating she was the husband. The agreement stated in part:
“a. That such child or children so produced are his own legitimate child or children and are the heirs of his body, and
“b. That he hereby completely waives forever any right which he might have to disclaim such child or children as his own.”
In the Wener case (supra), husband and wife agreed to adopt a child, then living in Florida. The child was removed from its natural mother and brought to New York and commenced living with the parties. Prior to the finalization of the adoption, the parties separated and a proceeding was brought seeking support from the husband. He defended the action on the grounds that neither statute nor case law imposed liability on him for child support, albeit that the lower court had found an implied agreement to adopt. The Appellate Division stated:
“We cannot ignore the realities of this infant’s plight and blindly apply a rule which was never meant to encompass her situation. This infant was taken from her natural mother when but a few days old, albeit with her mother’s consent. Her natural parents and their whereabouts are unknown (no one has ever suggested she be returned to them) and she has never been legally adopted. Still, the parties at bar are the only ‘parents’ she has ever known. Having brought the child into their home, they must, of necessity, shoulder the burden of her support.
“However, as between the parties themselves, the primary liability for support properly rests upon the plaintiff. Having agreed to adopt the child and support her, and having treated her as his own prior to the parties’ separation, the plaintiff may not now disavow all obligation and shift the entire burden onto the defendant. It may be reasonably inferred from the evidence that the defendant would not have acquired the child and brought her into their home in the absence of the plaintiffs consent to adoption. Therefore, the plaintiff’s primary obligation rests upon the dual foundation of an implied contract to support the child and equitable estoppel.” (Wener v Wener, supra, at p 53; emphasis added.)
*17 The court in Wener (supra) also relied upon the case of Gursky v Gursky (39 Misc 2d 1083). This case involved a husband and wife who had a child by means of artificial insemination at a time prior to the enactment of Domestic Relations Law § 73 which declared such children legitimate. In Gursky (supra), the child was found illegitimate. However, notwithstanding the finding of illegitimacy, the court held the husband responsible for the support of the infant. The court stated as follows:
“The husband’s declarations and conduct respecting the artificial insemination of his wife by means of a third-party donor, including the husband’s written ‘consent’ to the procedure, implied a promise on his part to furnish support for any offspring resulting from the insemination. This, in the light of the wife’s concurrence and submission to artificial insemination, was sufficient to constitute an implied contract. ‘A promise will be implied where the agreement is instinct with obligation and the implication is supported by the circumstances.’ (Renner v. Stanley Co., 136 Misc. 492, 493.) And, ‘An agreement may result as a legal inference from the facts and circumstances of the case, although not formally stated in words.’ (Wells v. Mann, 45 N. Y. 327, 331.)
“Moreover, a reading of the document of ‘consent’ signed by the husband clearly reveals that it constituted more than a mere acquiescence in, or approval of, or agreement to have the procedure of artificial insemination take place. The ‘consent’ was in its terms a request to the physician to conduct the artificial insemination for the express purpose of providing a child for the mutual happiness of the parties. There is nothing in the record to indicate that the wife would have undergone artificial insemination in the absence of the husband’s consent. Hence it is reasonable to presume that she was induced so to act and thus changed her position to her detriment in reliance upon the husband’s expressed wishes. To relieve the husband of any duty of furnishing support for the child resulting from the artificial insemination of the wife, to which she submitted in reliance of her husband’s wishes, would cast a financial burden upon the wife which in equity and conscience should be borne by the husband. The circumstances properly call for invocation and application of the doctrine of equitable estoppel so as to cast upon the husband, as between husband and wife, the primary duty of support of the child involved. It has been stated by the Court of Appeals that an estoppel ‘rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury’ (Metropolitan Life Ins. Co. v. *18 Childs Co., 230 N. Y. 285, 292; Lynn v. Lynn, 302 N. Y. 193, 205); and, a party may not, even innocently, mislead another and then claim the benefit of his deception (Romano v. Metropolitan Life Ins. Co., 271 N. Y. 288, 293). See, also, Triple Cities Constr. Co. v. Maryland Cas. Co. (4 NY 2d 443, 448)” (pp 1088-1089).
Although in the circumstances presented here the children involved have not brought a direct action for their support they are in reality acting through the modality of the petitioner, Erie County Department of Social Services. The contract entered into by this respondent with the mother and the doctor must inure to the benefit of these children. Ordinarily, children are unable to enforce the provisions of an agreement between parents. However, under extraordinary circumstances courts have permitted this to be done. {See, Forman v Forman, 17 NY2d 274.) The Court of Appeals stated in that case: “But children are often the actual third-party beneficiaries of provisions in separation agreements between the parents; and in cases of disability of one kind or another of one spouse to enforce his own legal rights against the other, some procedural facility for enforcement should be available to the children * * * We ought not by a general rule of abnegation foreclose ourselves completely from allowing a remedy that may become appropriate, effective and just. (Cf. Yates v. Yates, 183 Misc. 934)” (p 280).
We, of course, are not here dealing with a separation agreement. But certainly the document which was signed by the respondent and by which these children were brought into the world gives rise to a situation which must provide these two children with remedies. To hold otherwise would allow this respondent to completely abrogate her responsibilities for the support of the children involved and would allow her to benefit from her own fraudulent acts which induced their birth no more so than if she were indeed the natural father of these children. Of course, the respondent was free to engage and live in any lifestyle which she felt appropriate. However, by her course of conduct in this case which brought into the world two innocent children she should not be allowed to benefit from those acts to the detriment of these children and of the public generally.
As an additional defense, the respondent maintains that only a parent is liable for the support of children as set forth in Domestic Relations Law article 3-A. {See, Domestic Relations Law § 32.) She avers that by reason of the fact that she is female, she biologically could not be the parent of these children nor has she formally adopted them.
*19 The term “parent” is not defined in said statute except in biological terms and the court has found no authority to the contrary. Ballantine’s Law Dictionary 911 (3d ed) defines “parent” as “[t]he father or mother”. (See, 39 Am Jur, Parent and Child, § 2.) In Black’s Law Dictionary 1003 (5th ed 1979) “parent” is defined as “[o]ne who procreates, begets, or brings forth offspring.” The actions of this respondent in executing the agreement above-referred to certainly brought forth these offspring as if done biologically. The contract and the equitable estoppel which prevail in this case prevent the respondent from asserting her lack of responsibility by reason of lack of parenthood. This court finds that under the unique facts in this case, respondent is indeed a “parent” to whom such responsibility attaches.
The respondent is chargeable with the support of these children and this case is referred to the hearing examiner to determine the level of such support. Whatever may be the rights and/or remedies of the respondent and the mother of these children concerning custody, visitation, inheritance rights and any others are left to another forum at another time.